IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Jason O. Riley, *a/k/a* Jason Orlando Riley, | ) | C/A No. 8:14-cv-01655-RMG-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Leroy Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment.
[Doc. 20.]  Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28
U.S.C. § 2254.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule
73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for
relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on April 22, 2014.[1]  [Doc. 1.]
On August 13, 2014, Respondent filed a motion for summary judgment and a return and
memorandum to the Petition.  [Docs. 19, 20.]  On August 19, 2014, the Court filed an Order
pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the
summary judgment procedure and of the possible consequences if he failed to adequately

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison
authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).
Accordingly, this action was filed on April 22, 2014.  [Doc. 1-2 (envelope stamped as
received by the prison mail room on April 22, 2014).]

respond to the motion. [Doc. 21.] On September 4, 2014, Petitioner filed a response in opposition[2] [Doc. 25], and he filed an additional response in opposition on September 18, 2014 [Doc. 30].

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is presently confined in the South Carolina Department of Corrections at McCormick Correctional Institution pursuant to orders of commitment of the Richland County Clerk of Court. [Doc. 1 at 1.] In December 2004, Petitioner was indicted for murder and armed robbery. [App. 945–50.[3]] On September 20, 2005, represented by Mary P. Miles ("Miles"), Petitioner proceeded to trial. [App. 1–789] On September 23, 2005, the jury returned a verdict of guilty on both charges. [App. 784–85.] Petitioner was sentenced to life imprisonment on the murder charge and 30 years imprisonment on the armed robbery charge. [App. 788.]

---

[2]Petitioner also filed what he captioned an "Addendum to Petition for Writ of Habeas Corpus" on August 21, 2014. [Doc. 23.] In that filing, Petitioner alleges that Respondent has made misrepresentations in his return and memorandum. Accordingly, the Court considers this filing to also be responsive to the motion for summary judgment.

[3]The Appendix can be found at Docket Entry Numbers 19-7 through 19-12.

**Direct Appeal**

Petitioner appealed his conviction but subsequently withdrew the appeal. [Doc. 19-1.] On March 20, 2007, the South Carolina Court of Appeals dismissed Petitioner's appeal and issued remittitur. [Doc. 19-2.]

**PCR Proceedings**

***First PCR Application***

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on March 5, 2008. [App. 790–94.] Petitioner alleged he was being held in custody unlawfully based on the following grounds, quoted substantially verbatim:

      (a)    Due Process violation

      (b)    Ineffective assistance of counsel

[App. 791.] In support of his grounds for relief, Petitioner provided the following allegations, quoted substantially verbatim:

      (a)    Prosecutorial Misconduct; and Brady violation

      (b)    Failure to object to prosecutor's misconduct; failure to object to perjured testimony

[App. 791.] The State filed a return on July 10, 2008. [App. 795–800.] Petitioner, through counsel Tommy A. Thomas ("Thomas"), amended his PCR application on November 19, 2010.[4] [App. 804–05.] The amended PCR application raised the following allegations of ineffective assistance of counsel:

_____

[4]The PCR court noted that several other proposed amendments were not properly before the court because some were not signed by Petitioner's initial PCR counsel and another was submitted as a pro se amendment while Petitioner was represented by counsel. [App. 929 n. 2.]

3

1.     Counsel was ineffective for her failure to locate and subpoena, Tyrone Johnson, an eye witness to the crime.  Mr. Johnson was able to give a description of the Assailant that did not match the Petitioner.

2.     That Trial Counsel was ineffective for not timely filing Notice of alibi as required by the Rules of Civil Procedure.  Due to the failure to timely file, Petitioner was denied the ability to assert alibi or use alibi witnesses.

3.     That Trial Counsel was ineffective for not challenging the State objection to use and introduction of the deceased eye witness statement of Barbara Moss.

[App. 804.]

A hearing was held on December 7, 2010, and Petitioner was represented at the hearing by Thomas.  [App. 806–927.]  On February 11, 2011, the PCR court filed an order denying and dismissing the application with prejudice.  [App. 928–40.]  On February 25, 2011, Petitioner filed a motion to alter or amend the judgment [App. 941–42], which the PCR court denied on March 31, 2011[5] [App. 943–44].  A notice of appeal was timely filed and served.

On January 3, 2012, Susan B. Hackett ("Hackett") of the South Carolina Commission on Indigent Defense filed on Petitioner's behalf a *Johnson* petition[6] for writ of certiorari in the Supreme Court of South Carolina.  [Doc. 19-3.]  The petition asserted the following as the sole issue presented:

---

[5]The order denying the motion to alter or amend the judgment was filed on April 1, 2011.  [App. 943.]

[6]A *Johnson* petition is the state PCR appeal analogue to an *Anders* brief; a brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.  *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

> Did appellate counsel provide ineffective assistance by failing to appeal the trial judge's erroneous ruling that the prosecutor had not violated the Rules of Criminal Procedure by failing to disclose cell phone tower logs prior to the start of trial where the uncontested evidence established that the prosecution intended to use the evidence in its case-in-chief?

[*Id.* at 3.]  At the same time she filed the *Johnson* petition, Hackett submitted a petition to be relieved as counsel.  [*Id.* at 12.]  Petitioner filed a pro se petition raising the following issues, quoted substantially verbatim:

> I.    State prosecutors displayed misconduct by suborning witnesses Jeffrey McDaniels and Ricky Hagler to commit perjury by offering them plea deals to change material facts given on sworn affidavits.
>
> II.    State prosecutors committed misconduct by suppressing the revised editions of the previous statements made by Jeffrey McDaniel and Ricky Hagler.
>
> III.    State prosecutors committed misconduct by knowingly using perjured testimony to secure a conviction against Petitioner.
>
> IV.    State prosecutors violated Petitioner's Due Process rights by withholding exculpatory Verizon Wireless phone tower logs that were in its possession and intended to be used in its case-in-chief.
>
> V.    Trial counsel was grossly ineffective for not challenging the State's objection to the introduction of deceased eyewitness Barbara Moss' statement, properly reserving the issue for appellate review.
>
> VI.    Trial counsel erred by not objecting to prosecutorial subornation of perjury.
>
> VII.    Trial counsel was highly ineffective for not objecting to prosecutorial misconduct, where State prosecutors clearly violated Petitioner's Due Process Rights by suppressing the revised editions of prior statements given by Jeffrey McDaniel and Ricky Hagler.

VIII.     Trial counsel violated Petitioner's Sixth Amendment right to effective assistance of counsel by not objecting to the impermissible solicitation of perjured testimony.

IX.     Trial counsel prejudiced Petitioner by not objecting, accurately, to the State's withholding of exculpatory Verizon Wireless phone tower logs.

[Doc. 19-4 at 5–6.]  The court denied the petition and granted counsel's request to withdraw on April 9, 2014 [Doc. 19-5] and remitted the matter to the lower court on April 25, 2014 [Doc. 19-6].

### Second PCR Application

Petitioner, proceeding pro se, filed a second PCR application on April 12, 2011. [Doc. 19-13.]  Petitioner alleged he was being held in custody unlawfully based on the following grounds, quoted substantially verbatim:

(a)     Prosecutorial misconduct

(b)     Ineffective assistance of counsel

[*Id.* at 3.]  In support of his ground for relief, Petitioner provided the following allegation, quoted substantially verbatim:

(a)     State's prosecutor's subornation of perjured testimony. See attachments.

(b)     State's prosecutors admission of perjured testimony in his case-in-chief.

(c)     Counsel's ineffectiveness for not properly challenging State's objection to hearsay testimony.

[*Id.*]  Petitioner asserted that each of these claims were presented at the December 7, 2010, evidentiary hearing and were addressed in the PCR dismissal order; however, no specific findings of fact were expressed and a Rule 59(e) motion was filed and dismissed.

[*Id.* at 9.]  As of the date Respondent filed its motion for summary judgment, the State had not yet made a return to the second PCR application.[7]  [*See* Doc. 19 at 8.]

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on April 22, 2014.  [Doc. 1.] Petitioner raises the following grounds for relief, quoted substantially verbatim, in his Petition pursuant to 28 U.S.C. § 2254:

> **GROUND ONE:**  Prosecutorial misconduct - Subornation of perjury
>
> *Supporting facts*:  State prosecutors displayed misconduct by suborning witnesses Jeffrey Mcdaniels and Ricky Hagler to commit perjury by giving them plea deals to change material facts given on sworn affidavits.  At trial, Solicitors Richard Cathcart and Margaret Fent gave those deals only after Ricky and Jeffrey agreed to make said revisions to aforementioned statements given to investigators Mitch Wilkerson and Paul Mead.
>
> **GROUND TWO:**  Prosecutorial misconduct - Suppression of Exculpatory evidence
>
> *Supporting facts*:  State Prosecutors committed misconduct by suppressing the revised editions of the previous sworn statements made by Jeffrey Mcdaniels and Ricky Hagler. At the trial of Mr. Riley, Solicitors Richard Cathcart and Margaret Fent violating <u>Brady v. Maryland</u> by not disclosing the material changes made in the affidavits.  Said prosecutors should have included these revised editions with Rule 5 discovery material.

---

[7]Although this Court has occasionally stayed a federal habeas case until the state court rules on a pending PCR application, a stay would not be appropriate in this case. Pursuant to *Rhines  v. Weber*, 544 U.S. 269, 276 (2005), a federal habeas case may be stayed and held in abeyance "where such a stay would be a proper exercise of discretion." *Id*. at 276.  The Supreme Court further stated that in certain instances where a petitioner had filed a "mixed" petition—a petition containing exhausted and unexhausted claims—an exercise of such discretion would be proper.  *Id.* at 272–73, 276.  Here, all of the claims raised in the Petition are exhausted; accordingly, a stay would be inappropriate.

**GROUND THREE:**   Prosecutorial misconduct - knowing use of perjured testimony

*Supporting facts*:   State prosecutors committed misconduct by knowingly using perjured testimony to secure a conviction against Mr. Riley. Both State witnesses committed perjury by willfully giving false, misleading, or incomplete information to investigator on sworn statements, violating S.C. Code Ann. 16-9-10(A)(2). These perjured testimonies supplied the State's case-in-chief.

**GROUND FOUR:**   Prosecutorial misconduct - Suppression of Exculpatory Evidence

*Supporting facts*:   State prosecutors violated Mr. Riley's Due Process rights by withholding exculpatory cell phone tower logs that were in its possession and intended to be used in their case-in-chief. At trial, prosecutors presented cell phone tower logs to impeach Mr. Riley on rebuttal; however, had defense been supplied with a copy of tower logs before trial - as required by Rule # 5 - the exact tower location of the crime scene would have been ascertained and Mr. Riley would have been acquitted.

**GROUND FIVE:**   Ineffective assistance of counsel

*Supporting facts*:   Trial counsel was grossly ineffective for not challenging the State's objection to the introduction of deceased eyewitness Barbara Moss' statement, pursuant to Rule # 804(a)(4), preserving the issue for appellate review. Mr. Riley contends that Ms Miles was fully aware that Ms. Moss gave descriptions of assailants that did not match him. Additionally, Ms. Moss told investigators that no one else was present at the scene of the crime, which took place in her front yard, besides she and Tyrone Johnson; thus refuting the account of alleged eyewitness Easten Smalls. Mr. Riley asserts that had the jury been entertained with these facts, the outcome of his trial would have resulted in an acquittal, or in the least, the issue would have been apt for direct appeal.

**GROUND SIX:**   Ineffective assistance of counsel - Failure to object to Prosecutorial subornation of perjury

8

*Supporting facts*:    Trial counsel erred by not objecting to Prosecutorial subornation of perjury.  Mr. Riley maintains that once Prosecutors Richard Cathcart and Margaret Fent suborned witnesses Ricky Hagler and Jeffrey Mcdaniels to commit perjury by offering them plea deals, Ms. Miles should have made a timely objection to prosecutorial misconduct, at least preserving the issue for direct appeal.  Ms. Miles prejudiced Mr. Riley when she allowed said witnesses to change material facts, knowing that their testimonies would be directly contradictory to sworn statements procured by investigators.  The changes were material.  Aforementioned prosecutors knowingly and intelligently used the suborned perjured testimony - a violation of S.C. Code Ann. 16-9-20(A)(2) - as the sole basis for conviction; therefore, counsel's representation fell below an objective standard of reasonableness.

**GROUND SEVEN:**    Ineffective assistance of counsel - failure to object to prosecutorial misconduct

*Supporting facts*:    Trial counsel was highly ineffective for not objecting to prosecutorial misconduct, where state prosecutors clearly violated Mr. Riley's Due Process Rights by suppressing the revised editions of prior statements given by State's star witnesses.  Prosecutors Richard Cathcart and Margaret Fent were conscious that the witnesses they were planning on using to testify against Mr. Riley were not telling the truth.  Sometimes prior to trial by jury the prosecutors decided to Question Jeffrey and Ricky on their veracity.  Once the material changes were made they should have been documented and the revised editions should have been included with Rule # 5 Brady material, they weren't.  Mr. Riley declares that he was prejudiced by Ms. Miles' failure to object to prosecutorial misconduct, she could not provide competent representation when compelled to speculate as to what a witness will testify to and his trial and unlawful conviction resulted in a gross miscarriage of justice.

**GROUND EIGHT:**    Ineffective assistance of counsel - failure to object to the impermissible solicitation of perjured testimony

9

*Supporting facts*:    At trial, Mr. Riley's counsel was egregiously ineffective for failing to object to the State's use of the perjured testimonies of Ricky Hagler and Jeffrey Mcdaniels. Ms. Miles' trial strategy was to impeach said witnesses on the numerous inconsistencies in their collective statements. However, on the day Mr. Riley's trial commenced, Ricky and Jeffrey agreed to plea deals for the strong armed robbery, accessory to "tell the truth"; in other words, to testify contrarily to sworn statements. Margaret Fent and Richard Cathcart violated Mr. Riley's Due Process Rights by introducing perjured testimonies and Ms. Miles was ineffective for failing to object.

**GROUND NINE:**    Ineffective assistance of counsel: Failure to object to suppression of Exculpatory Evidence

*Supporting facts*:    Mr. Riley's trial counsel prejudiced him by not objecting accurately the State's withholding of exculpatory phone tower logs in its possession at trial. Ms. Miles objected to the inculpatory/impeaching values of the phone tower logs introduced by the State. However, these phone tower logs corroborated Mr. Riley's alibi defense that he was at home during the commission of these crimes and had he and his defense been supplied with said phone tower logs, as required by the Rule # 5 discovery statute, they would have been able to pinpoint the exact phone tower location of the crime scene. Because Ms. Miles objected erroneously, the State was allowed to use the logs on rebuttal and the jury never had the opportunity to hear the potentially exonerating facts about the phone tower logs.

[Doc. 1 at 5–15.] As stated, on August 13, 2014, Respondent filed a motion for summary judgment. [Doc. 20.] On August 21, 2014, Petitioner filed what he captioned an "Addendum to Petition for Writ of Habeas Corpus, which the Court considers as responsive to the motion for summary judgment [Doc. 23]; on September 4, 2014, Petitioner filed a response in opposition [Doc. 25]; and on September 18, 2014, he filed an additional response in opposition [Doc. 30]. Accordingly, the motion is ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action pro se, which requires the Court to liberally construe

his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S.

519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978);

*Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less

stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under

this less stringent standard, however, the pro se petition is still subject to summary

dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court

can reasonably read the pleadings to state a valid claim on which the petitioner could

prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court

may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d

411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely

presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved

for summary judgment:

> The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would

affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc*., 477

U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such

11

that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

12

> (including those made for purposes of the motion only),
> admissions, interrogatory answers, or other materials;
> or
>
> (B) showing that the materials cited do not establish the
> absence or presence of a genuine dispute, or that an
> adverse party cannot produce admissible evidence to
> support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed the Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's

13

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)　(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or

14

(B)     (I) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR.  State law requires that all grounds for relief be stated in the direct appeal or PCR application.  S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as required by S.C.

15

Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment.   S.C. R. Civ. P. 59(e).   Failure to do so will result in the application of a procedural bar to that claim by the Supreme Court of South Carolina.   *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[8]   Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.   For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.   S.C. App. Ct. R. 203(b)(2), (d)(1)(B).   A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.   S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.   *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).   Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the Supreme Court of South Carolina through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

---

[8]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and

17

> while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96.   A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel.  *Id.* at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default.   *Carrier*, 477 U.S. at 492.   To show actual prejudice, the petitioner must demonstrate more than plain error.  *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

## DISCUSSION

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2).  The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief.  *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth

19

Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning.").  The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

20

**Grounds One, Two, and Three**

Grounds One, Two, and Three allege prosecutorial misconduct related to Petitioner's co-defendants giving different testimony at trial than what was included in their written statements to investigators. In Ground One, Petitioner alleges the prosecutors suborned Jeffrey McDaniels and Ricky Hagler to commit perjury by giving them plea deals to change material facts given on sworn affidavits; in ground two, Petitioner alleges the prosecutors violated *Brady v. Maryland* by suppressing the revised editions of the previous sworn statements, which should have been included with Rule 5 discovery material; and in ground three, Petitioner alleges the prosecutors knowingly used perjured testimony to secure a conviction against Petitioner.[9] [Doc. 1 at 5–8.] The Court concludes Petitioner is not entitled to federal habeas corpus relief based on these allegations.

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

---

[9]The PCR court addressed the co-defendants' statements only under *Brady* and Rule 5 and not as subornation of or knowing use of perjured testimony. [App. 936.] Petitioner raised the issue of subornation of prejudice in his motion to alter or amend judgment under Rule 59 [App. 941–42], but the court denied the motion [App. 943–44]. Although at one point in the memorandum in support of the motion for summary judgment, Respondent indicates that some grounds are procedurally barred [Doc. 19 at 18 ("The issues abandoned on PCR appeal as set forth below . . . .")], Petitioner addresses each ground on the merits and does not argue any grounds are procedurally barred [*id.* at 19–43]. Because procedural default is an affirmative defense that is waived if not raised by a respondent, *Gray v. Netherland*, 518 U.S. 152, 165–66 (1996), the Court will address the merits of all grounds. For those grounds not addressed by the state court on the merits, including Grounds One and Three, the Court's review is de novo. *Weeks v. Angelone*, 176 F.3d 249, 258 (4th Cir. 1999) ("When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, . . . our review of questions of law and mixed questions of law and fact is de novo." (citing *Jones v. Jones*, 163 F.3d 285, 299–300 (5th Cir. 1998)).

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court "held that when a State suppresses evidence favorable to an accused that is material to guilt or to punishment, the State violates the defendant's right to due process, 'irrespective of the good faith or bad faith of the prosecution.'" *Cone v. Bell*, 556 U.S. 449, 451 (2009) (citing *Brady*). To prove a *Brady* violation, a defendant must demonstrate that evidence was (1) favorable to him; (2) in the possession of or known by the prosecution, but nevertheless suppressed by the State; and (3) material to his guilt or innocence or was impeaching. *E.g., Strickler v. Greene*, 527 U.S. 263, 280–81 (1999). Evidence is material when there is a reasonable probability that the result of trial would have been different had the evidence been disclosed to the defense. *United States v. Bagley*, 473 U.S. 667, 682 (1985). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.* (quoting *Bagley*, 473 U.S. at 678).

Additionally, the use of testimony that the prosecution knows is perjured or false may constitute prosecutorial misconduct. *See Giglio v. United States*, 405 U.S. 150, 153 (1972). In *Napue v. Illinois*, 360 U.S. 264, 269 (1959), the Court held that due process is generally denied if the government knowingly uses perjured testimony against the accused to obtain a conviction. "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.* To meet his burden of

proof, a defendant must show that (1) perjured testimony was presented; (2) the prosecution knew the evidence was false; and (3) there is a "reasonable likelihood that the false testimony could have affected the judgment of the jury." *Boyd v. French*, 147 F.3d 319, 330 (4th Cir. 1998) (citations and internal quotations omitted).

Here, the PCR court addressed the co-defendants' statements:

> "The rules encompassed in *Brady*, and its progeny, and Rule 5 are separate and impose different duties. Therefore, separate analysis must be used to determine if either has been violated." State v. Kennerly, 331 S.C. 442, 452, 503 S.E.2d 214, 219 (S.C. Ct. App. 1998) aff'd, 337 S.C. 617, 524 S.E.2d 837 (1999).

> In evaluating post-trial Brady claims, the Applicant must show that (1) the prosecution suppressed evidence, (2) the evidence would have been favorable to the accused, and (3) the suppressed evidence is material. United States v. Wolf, 839 F.2d 1387 (10th Cir. 1988).

> The requirements of Rule 5, as opposed to the constitutional dictates of *Brady*, are judicially created discovery mechanisms for use in criminal proceedings. Rule 5(a)(1)(C) requires:

>> Upon request of the defendant the prosecution shall permit the defendant to inspect and copy books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the prosecution, and which are material to the preparation of his defense or are intended for use by the prosecution as evidence in chief at the trial, or were obtained from or belong to the defendant.

> Kennerly, at 453.

> This Court finds that there was no prosecutorial misconduct or Brady violation under which it could grant Riley

23

relief.  The analysis for the two claims is somewhat overlapping.

### i.    Codefendant Statements

The co-defendants testified at trial and for the most part acknowledged the inconsistencies between their trial testimony and their original statements.  Because they testified, the jury heard the evidence and there can be no claim that the State suppressed anything.  Sheppard v. State, 357 S.C. 646, 594 S.E.2d 462 (2004) (holding that no Brady violation occurred because material was available at trial and there was not a reasonable probability that the outcome of the trial would have been different had the material been disclosed *prior* to trial).

The remaining issue as to Riley's claim regarding the co-defendants' testimony compared to their original statements to law enforcement involves Rule 5, SCRCrimP.  Riley has failed to satisfy his burden of proof as to this allegation.  He presented no evidence that the State had any documents or tangible evidence regarding what testimony the co-defendants planned on providing versus their original statements to law enforcement.  Accordingly, the Applicant's claims regarding prosecutorial misconduct/Brady/Rule 5, SCRCrimP as to the testimony of the co-defendants is without merit.

[App. 935–36 (footnote omitted) (emphasis in original).]

First, to the extent Petitioner alleges a violation of Rule 5 of the South Carolina

Rules of Criminal Procedure, his claim is not cognizable for federal review.  "[I]t is not the

province of a federal habeas court to reexamine state-court determinations on state-law

questions.  In conducting habeas review, a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v.*

*McGuire*, 502 U.S. 62, 67–68 (1991).  Accordingly, the Court cannot review a South

Carolina court's ruling regarding the State's compliance with Rule 5 of the South Carolina

Rules of Criminal Procedure.

24

With respect to the alleged *Brady* violation, the PCR court's order was not contrary to nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The PCR court found that Petitioner presented no evidence that the State had any documents or tangible evidence regarding what testimony the co-defendants planned to give at trial or that it differed from their original statements.  [App. 936.]  The record supports this finding.  Solicitor Cathcart testified at the PCR hearing that, although he could not recall the statements in this particular case, it is not uncommon for defendants to give self-serving initial statements and that, if during the pre-trial interview, he found out a witness's testimony was going to be different such that it would be exculpatory toward the defendant, that would be provided to the defense.  [App. 915–16.]  Additionally, it is undisputed that Miles had the prior statements given to investigators and that the co-defendants testified at Petitioner's trial.  Miles testified at the PCR hearing that she pointed out the discrepancies between the written statements and what was testified in court [App. 882–82]; accordingly, the prior statements were used to call into question these witnesses' credibility at trial.  Thus, the PCR court's order was not contrary to nor an unreasonable application of clearly established federal law, and the record supports the PCR court's finding.

Finally, with respect to the allegations that the prosecutors suborned perjured testimony or knowingly used perjured testimony to secure Petitioner's conviction, Petitioner is unable to establish that perjured testimony was presented or that the prosecution knew the testimony was false.   Jeffrey McDaniel testified at trial that he did not tell the investigator everything initially because he was frightened at the time.  [App. 163:16–164:

25

2.] He further testified that he was asked to tell the truth at trial and that he was telling the truth. [App. 164:3–7.] Ricky Hagler testified at trial that he pled to strong armed robbery and accessory after the fact to murder in exchange for a 30-year sentence. [App. 247:24–248:3.] He also testified that he had agreed to tell the truth at trial. [App. 248:4–5.] Hagler further testified that he was telling the truth when he gave a statement to a detective but he "just didn't like include [himself] that much." [App. 249:14–20.] Petitioner has provided no evidence that the testimony at trial was false. Petitioner merely points out that these co-defendants had previously given statements that were inconsistent with their testimony at trial, which Miles was able to point out to the jury at trial. Therefore, Petitioner is not entitled to habeas corpus relief on these grounds, and Respondent's motion for summary judgment should be granted.

**Ground Four**

In Ground Four, Petitioner alleges prosecutorial misconduct based on the suppression of cell phone tower logs. [Doc. 1 at 10.] The Court concludes Petitioner is not entitled to federal habeas corpus relief based on this allegation.

The PCR court addressed the suppression of the cell phone tower logs:

> There is no merit to Riley's claim that the State's not sharing the cell tower data before trial amounted to a Brady or Rule 5 violation. Whether the claim is that the issue was not properly argued/preserved by trial counsel or that appellate counsel did not argue it on appeal, there is no prejudice because the Applicant cannot satisfy his burden of proof as to how timely production of the cell tower data would have helped the case. Simply put, the Applicant has failed to demonstrate any prejudice.
>
> The State explained that the cell tower data was received during the final day of the trial and that it never intended to use the data in its case in chief. (Trial transcript,

p. 514 L. 10–12).  The alibi's original statement was that she was with Riley "clubbing" all night.  (Trial transcript, p. 515).  When the State received the Notice of Alibi that Latoya was going to testify that she and Riley were at home on [redacted] the State consulted the cell tower data to check the alibi's conflicting stories.  (Trial transcript, p. 515–516).

Further, Miles may have faced an ethical dilemma had she had the cell tower data before trial and known that the alibi was not "clubbing" with Riley at the time of the crime.  Miles testified to this Court that if she had the cell tower data logs, and knew the location data that the State was going to present in rebuttal, she would have then faced an ethical dilemma in both calling Latoya to testify and with the Applicant's testimony.[10]  Accordingly, the only argument as to prejudice for the supposed untimely production of the cell tower data was that if the defense had it before trial it would not have presented potentially perjuring testimony.  After all, as trial counsel explained, the State's rebuttal testimony and evidence showed that the Riley's and Latoya's testimony was wholly incons[istent] with the uncontroverted cell tower data.  Essentially, Riley's claim is that if he had known of the cell tower data sooner then he and his alibi would not have testified contrary to the cell tower data and the outcome of the trial would have been different.[11]  Riley's supposed prejudice is, in this Court's mind, a sham.

_____

[10] *See* In the Matter of Goodwin, 279 S.C. 274, 305 S.E.2d 578 (1983) (attorney has an ethical duty not to perpetuate a fraud upon the court by knowingly presenting perjured testimony).

[11] Latoya's initial statement was that she did not see the Applicant until midnight [hours after the murder] and that she was not going to lie for the Applicant.  (Trial transcript, p. 472).  The cell tower logs supported Latoya's initial statement that she saw the Applicant around midnight at the club because the cell tower log shows that the Applicant first connected to the tower near Columbia Life at "11:54 p.m." (Trial transcript, p. 489).   The inconsistencies between the cell tower data and the Applicant's (and Latoya's) testimony are numerous.  The Applicant claimed he would not turn his phone off on a Friday night (Trial transcript, p. 399); yet his phone was turned off while the victim was robbed and killed [21:47 to 22:18] (Trial transcript, p. 487 L. 16–19).  The Applicant claimed that he was at the club when he called Latoya's phone just before 11:00 p.m. (Trial transcript, p. 399); yet the cell tower logs showed his phone was using the tower on Shakespeare Road, he does not hit the tower near the club until 11:54 p.m. [23:54] (Trial transcript, p. 488, 489).

> The State used the cell tower as rebuttal evidence to rebut Riley's and Latoya's claim that they were at the house on [redacted] braiding hair at the time of the murder. This was proper use of rebuttal evidence and did not prejudice Riley in any way. See e.g., Daniel v. Tower Trucking Co., 205 S.C. 333, 32, S.E.2d 5 (1944) (stating that reply testimony should be limited to rebuttal of matters raised in defense and should not be used to complete the plaintiff's case in chief).

[App. 937–38 (footnotes in original).]

First, to the extent Petitioner alleges a violation of Rule 5 of the South Carolina Rules of Criminal Procedure, his claim is again not cognizable for federal review. *See Estelle*, 502 U.S. at 67–68. With respect to the alleged *Brady* violation, the PCR court's order was not contrary to nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The record supports a finding that Petitioner could not establish that the cell phone tower logs were favorable to him. *See Strickler*, 527 U.S. at 280–81. Miles testified at the PCR hearing that the cell phone tower logs put Petitioner in an area where he said he was not. [App. 901:1–2.] Moreover, even if the evidence were favorable to Petitioner, where the "information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine." *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990). Therefore, Petitioner is not entitled to habeas corpus relief on this ground, and Respondent's motion for summary judgment should be granted.

**Ground Five**

In Ground Five, Petitioner argues Miles was ineffective for not challenging the State's objection to the introduction of a statement by deceased eyewitness Barbara Moss ("Moss").[12] [Doc. 1 at 11.] The Court concludes Petitioner is not entitled to federal habeas corpus relief based on this allegation.

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[13] *Richter*, 131 S.Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial

---

[12]Although the PCR court identified that Petitioner raised this claim [App. 931], it failed to otherwise address the claim. Petitioner filed a motion to alter or amend the judgment pursuant to Rule 59 of the South Carolina Rules of Civil Procedure, seeking specific findings and/or conclusions on this issue [App. 941–42]; however, his motion was denied [App. 943–44]. Accordingly, the Court's review of this claim is de novo. *Weeks*, 176 F.3d at 258.

[13]In *Strickland v. Washington*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. 668, 687 (1984). To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

At trial, during the examination of investigator Paul Mead, Miles attempted to introduce testimony about an interview with Moss[14]; however, the State objected to most of the questions about Moss's statement based on hearsay. [*See, e.g.*, App. 523:17–21.] Petitioner argues Miles was ineffective for not challenging the State's objections because Moss gave a description of the assailant that did not match Petitioner and told investigators that only she and Tyrone Johnson were present at the scene of the crime, thereby refuting the account of alleged eyewitness Easton Smalls. At the PCR hearing, Miles testified that Moss's statement was not a dying declaration; therefore, Miles could not get the statement admitted. [App. 887:12–14.] Miles further testified that she wanted to get the statement in to show the difference between who Moss described as the assailant and Petitioner. [App. 889:8–14.]

---

[14]Moss was an eyewitness to the murder but was shot and killed by a drive-by shooter three nights later. [App. 109:1–4.]

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), SCRE. Hearsay is "not admissible except as provided by these rules or by other rules prescribed by the Supreme Court of this State or by statute." Rule 802, SCRE. Rule 804 of the South Carolina Rules of Evidence provides hearsay exceptions. In his Petition, Petitioner argues Miles should have challenged the objection to the introduction of the statement under Rule 804(a)(4) of the South Carolina Rules of Evidence. However, Rule 804(a)(4) merely defines a situation in which a witness is deemed unavailable because of death or physical or mental illness or infirmity. The hearsay exceptions are included in Rule 804(b) of the South Carolina Rules of Evidence, and none of these exceptions are applicable to Moss's statement. Miles and Thomas both conceded that the statement was not a dying declaration under Rule 804(b)(2), and Thomas conceded the statement was probably not an exception to hearsay. [App. 887:12–14; 890:2–4.] Accordingly, because the statement was inadmissible hearsay, Petitioner cannot establish that Miles was ineffective for failing to challenge the State's objection. Therefore, Petitioner is not entitled to habeas corpus relief on this ground, and Respondent's motion for summary judgment should be granted.

**Grounds Six, Seven, and Eight**

Grounds Six, Seven, and Eight allege ineffective assistance of counsel related to the alleged prosecutorial misconduct raised in Grounds One, Two, and Three. In Ground Six, Petitioner alleges Miles was ineffective for failing to object to prosecutorial misconduct related to the subornation of perjury; in Ground Seven, Petitioner alleges Miles was ineffective for failing to object to prosecutorial misconduct related to the suppression of

31

revised editions of the co-defendants' previous sworn statements; and in Ground Eight, Petitioner alleges Miles was ineffective for failing to the impermissible solicitation of perjured testimony.  [Doc. 1 at 12–14.]  The Court concludes Petitioner is not entitled to federal habeas corpus relief based on these allegations.

As discussed, supra, Petitioner is unable to establish prosecutorial misconduct based on the suppression of revised editions of the co-defendants' statements or the subornation of or knowing use of perjured testimony.  Because Petitioner cannot establish prosecutorial misconduct on these bases, he likewise cannot establish Miles was ineffective for failing to object to prosecutorial misconduct.

**Ground Nine**

In Ground Nine, Petitioner alleges Miles was ineffective for failing to object to the suppression of the cell phone tower logs.  [Doc. 1 at 15.]  The Court concludes Petitioner is not entitled to federal habeas corpus relief based on these allegations.

As discussed, supra, Petitioner is unable to establish a *Brady* violation based on the suppression of the cell phone tower logs.  Because Petitioner cannot establish a *Brady* violation, he likewise cannot establish Miles was ineffective for failing to object to the suppression of the logs.


## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's

motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 16, 2015
Greenville, South Carolina.